UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE EDWARD HICKS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VALLEJO, et al.,<br><br>Defendants. | No.  2:14-cv-0669 KJM DAD PS<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, Tyrone Edward Hicks, is proceeding in this action pro se.  This matter was, therefore, referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).[1]  The action came before the court on October 10, 2014, for hearing of defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter "Rule").  Assistant City Attorney Kelly Trujillo appeared on behalf of the defendants and plaintiff Tyrone Hicks appeared on his own behalf.

For the reasons set forth below, the undersigned will recommend that defendants' motion to dismiss be denied.

---

[1] Both parties indicated on the record at the October 10, 2014 hearing that they wished to consent to magistrate judge jurisdiction in this action.  However, only defendants have filed a written consent to jurisdiction as directed.  (Dkt. No. 22.)  Plaintiff has failed to do so and therefore the District Judge assignment remains in place at this time.  If plaintiff wishes to consent to Magistrate Judge jurisdiction he must file a written consent form.

BACKGROUND

Plaintiff Tyrone Hicks commenced this action on March 12, 2014, by filing a complaint and a request to proceed in forma pauperis. (Dkt. Nos. 1 & 3.) On April 2, 2014, plaintiff filed a first amended complaint. (Dkt. No. 4.) On April 9, 2014, the undersigned granted plaintiff's motion to proceed in forma pauperis. (Dkt. No. 5.)

On June 16, 2014, defendants City of Vallejo, Sean Kenney and Cpl. Postolaki ("Defendants") filed a motion to dismiss. (Dkt. No. 9.) On August 14, 2014, the undersigned granted defendants' motion to dismiss while also granting plaintiff leave to file a second amended complaint. (Dkt. No. 14.) Plaintiff filed his second amended complaint on August 15, 2014. (Dkt. No. 16.)

The second amended complaint alleges, in relevant part, as follows. On March 30, 2012, at approximately 9:00 p.m., plaintiff was "lawfully" driving to a restaurant located at 2525 Sonoma Boulevard, in Vallejo, California with a passenger, Teresa Scott. (Sec. Am. Compl. (Dkt. No. 16) at 2.[2]) Upon pulling in to the restaurant's parking lot plaintiff "was unlawfully stopped by defendant Vallejo Police Officers, Sean Kenney and Ted Postolaki without reasonable suspicion of criminal activity or a . . . traffic violation." (Id. at 2-3.) Defendants Kenney and Postolaki approached plaintiff's vehicle and defendant Postolaki asked plaintiff for his driver's license, vehicle registration and proof of insurance, which plaintiff provided. (Id. at 3.)

Defendant Postolaki then ordered plaintiff to exit the vehicle, which plaintiff did. (Id.) As he exited the vehicle, plaintiff heard defendant Kenney "saying stop resisting" and then plaintiff observed defendant Kenney "with his hands around Teresa Scotts['] throat and they were struggling." (Id.) Defendant Postolaki "immediately pushed Plaintiff against his vehicle" and placed "extremely tight" handcuffs on plaintiff. (Id.) Defendant Kenney handcuffed Teresa Scott and "detained her in the back of a patrol car." (Id.) Plaintiff then "communicated to Defendant Sean Kenney that he had no right to choke Teresa Scott." (Id.) Defendant Kenney approached plaintiff and "placed his hands around Plaintiff's throat and began choking Plaintiff where

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1  Plaintiff could not breathe . . . ." (Id. at 3.) The choking lasted "approximately for 15-20
2  seconds" and defendant Postolaki did not "attempt to intercede." (Id.) Thereafter, "[w]ithout
3  consent" defendant Postolaki pat searched plaintiff and searched the inside of Plaintiff's pockets,
4  seizing $775. (Id.) Plaintiff was then "placed in a patrol car," and both defendant Kenney and
5  defendant Postolaki searched plaintiff's vehicle "without consent." (Id.)

6  Plaintiff complained that his handcuffs "were too tight and was causing him pain," but
7  defendants Kenny and Postolaki "ignored Plaintiff for over an hour." (Id. at 4.) Moreover,
8  without a "community caretaking reason," and despite the fact that plaintiff's niece was also at
9  the restaurant and willing to drive plaintiff's vehicle home, "defendants Kenney and Postolaki
10 ordered the impoundment" of plaintiff's vehicle. (Id.) Plaintiff was eventually booked in the
11 Solano County Detention Center for possession of cocaine for sale, however, "[t]he charges were
12 subsequently dismissed." (Id.)

13 Pursuant to these factual allegations, the second amended complaint asserts causes of
14 action pursuant to 42 U.S.C. § 1983 for alleged violations of plaintiff's rights under the Fourth
15 Amendment, "specifically unlawful vehicle stop, unlawful pat search, unlawful arrest, unlawful
16 vehicle search, excessive force and unlawful impoundment of plaintiff's vehicle," (id. at 1), as
17 well as a claim of municipal liability pursuant to Monell v. Dept's of Soc. Servs. of the City of
18 New York, 436 U.S. 658 (1978) against the City of Vallejo. (Sec. Am. Compl. (Dkt. No. 16) at
19 1.)

20 Defendants filed the pending motion to dismiss pursuant to Rule 12(b)(6) on September 5,
21 2014. (Dkt. No. 18.) Plaintiff filed an opposition on September 19, 2014. (Dkt. No. 19.)
22 Defendants filed a reply on October 3, 2014. (Dkt. No. 20.)

23 I. Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)

24 The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
25 sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.
26 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of
27 sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901
28 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

3

relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. See also Iqbal, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

/////
/////
/////

ANALYSIS

I.    Search and Seizure

The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures by law enforcement officers. Mapp v. Ohio, 367 U.S. 643, 655 (1961). The Fourth Amendment requires law enforcement officers to have at least a reasonable suspicion of criminal activity before making a brief investigatory stop ("Terry stop"). See Terry v. Ohio, 392 U.S. 1, 9 (1968); United States v. Johnson, 581 F.3d 994, 999 (9th Cir. 2009) ("Police may detain or seize an individual for brief, investigatory purposes, provided the officers making the stop have reasonable suspicion that criminal activity may be afoot.") (citation and internal quotation marks omitted). "While reasonable suspicion requires 'considerably less than proof of wrongdoing by a preponderance of the evidence,' an officer must be able to articulate facts creating grounds to suspect that criminal activity 'may be afoot.'" Ramirez v. City of Buena Park, 560 F.3d 1012, 1020 (9th Cir. 2009) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "Reasonableness . . . is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996).

In their motion to dismiss defendants argue that plaintiff's second amended complaint fails to allege that plaintiff "was stopped by defendants without reasonable suspicion."[3] (Defs.' MTD (Dkt. No. 18) at 6.) In his second amended complaint, however, plaintiff alleges that on March 30, 2012, he "was lawfully driving" his vehicle to a restaurant when defendants Kenney and Postolaki, officers with the Vallejo Police Department, "unlawfully stopped" plaintiff "without reasonable suspicion of criminal activity or . . . a traffic violation." (Sec. Am. Compl. (Dkt. No. 16) at 3.)

Defendants also argue that "[w]ith regard to the alleged illegal pat-search," plaintiff alleged that "he was only handcuffed and pat searched 'immediately' after plaintiff's companion

---

[3] In their motion defendants argue that plaintiff's second amended complaint raises claims for which plaintiff was not granted leave to amend. (Defs.' MTD (Dkt. No. 18) at 4.) The court did not intend to limit the scope of plaintiff's second amended complaint, but rather specifically instructed him that "[a]ll of the claims which plaintiff wishe[d] to proceed upon must be alleged in his second amended complaint." (Dkt. No. 14 at 2.)

5

engaged in a struggle with defendant Kenney." (Defs.' MTD (Dkt. No. 18) at 6.) Therefore, defense counsel argues, "defendant Postolaki was entitled to secure plaintiff Hicks to ensure the officers' safety," because defendant Postolaki "needed to be ready to assist defendant Kenney with a combative person and there were only two officers present." (Id.) Defendants conclude by contending that "it was objectively reasonable to handcuff plaintiff Hicks at that point." (Id.)

However, defendants do not adequately articulate how on a motion to dismiss the court could conclude that it was objectively reasonable to both handcuff and search plaintiff to ensure officer safety. More importantly, in his second amended complaint plaintiff alleges that he was not searched until after Teresa Scott had been handcuffed and detained in a patrol car and after defendant Kenney allegedly choked plaintiff.

Defendants also argue that the second amended complaint "omits that [plaintiff] was on parole at the time of the incident," that the "the officers confirmed his parole status," and that "[a] standard term of parole is search without warrant or cause."[4] (Id. at 7.) "Police . . . may lawfully conduct searches of parolees . . . without satisfying the Fourth Amendment's warrant requirement when certain conditions are met." United States v. Grandberry, 730 F.3d 968, 973 (9th Cir. 2013). However, "[b]y now it is clear that parole searches and seizures must 'pass muster under the Fourth Amendment test of reasonableness.'" Sherman v. U.S. Parole Com'n, 502 F.3d 869, 883 (9th Cir. 2007) (quoting Latta v. Fitzharris, 521 F.2d 246, 248-89 (9th Cir. 1975)). See also Samson v. California, 547 U.S. 843, 844 (2006) ("Examining the totality of the circumstances" with respect to suspicionless search of parolee); United States v. King, 736 F.3d 805, 808 (9th Cir. 2013) ("our task is to examine the totality of the circumstances to determine whether the suspicionless search of [probationer's] residence was reasonable"). "[A]n officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee." Samson, 547 U.S. at 857 n.5. See also United States v. Caseres, 533 F.3d

---

[4] Defendants request that the court take judicial notice of an "Abstract of Judgment," showing that plaintiff pled guilty to possession for sale of cocaine base in violation of California Health & Safety Code § 11351.5, on November 14, 2008, and was sentenced to five years in state prison. (Defs.' MTD (Dkt. No. 18) at 14.) Defendants have also requested judicial notice of what appears to be a print out from the CDCR website addressing "Parolee Conditions." (Id. at 16.)

6

1  1064, 1075-76 (9th Cir. 2008) ("The search condition validates a search only if the police had

2  advance knowledge that the search condition applied before they conducted the search.").

3  Moreover, "even when an officer knows the parole . . . status of the subject before

4  beginning the search, that search may still be unconstitutional if the search is made at the 'whim

5  or caprice' of the law enforcement officer." Fitzgerald v. City of Los Angeles, 485 F.Supp.2d

6  1137, 1143 (C.D. Cal. 2007). See also Samson, 547 U.S. at 856 ("The concern that California's

7  suspicionless search system gives officers unbridled discretion to conduct searches, thereby

8  inflicting dignitary harms that arouse strong resentment in parolees and undermine their ability to

9  reintegrate into productive society, is belied by California's prohibition on 'arbitrary, capricious

10 or harassing' searches.").

11 The court simply cannot resolve the constitutionality of the search and seizure of plaintiff

12 in light of his parole status on a motion to dismiss.[5] See, e.g., Caseres, 533 F.3d at 1076 ("the

13 record provides an insufficient basis for us to find that the search of Caseres's car was

14 constitutional as a parole search").

15 /////

16 /////

17 /////

18 /////

19 /////

20 /////

21 /////

---

[5] Several of defendants' arguments in support of their motion to dismiss are based on factual challenges that do not truly attack the legal sufficiency of the allegations of the second amended complaint. "Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Instead, the question before the court in analyzing defendants' Rule 12(b)(6) motion, is whether the second amended complaint has stated a claim on which relief may be granted. As noted above, in determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon, 467 U.S. at 73; Love, 915 F.2d at 1245. In considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." Iqbal, 556 U.S. at 679.

Accordingly, defendants' motion to dismiss should be denied as to the second amended complaint's claims for unreasonable search and seizure.[6]

II.     Excessive Force

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the Graham factors.'" Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)). Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002) (citing Graham, 490 U.S. 386).

Claims alleging excessive force in making an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard rather than under a substantive due process standard. Price v. Sery, 513 F.3d 962, 967 (9th Cir. 2008). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham, 490 U.S. at 394. See also Albright v. Oliver, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) ("Substantive due process analysis is therefore inappropriate . . . if [plaintiffs'] claim is covered by the Fourth Amendment."); Graham, 490 U.S. at 395 ("*all*

---

[6] As noted above, the second amended complaint also alleges that "[w]ithout a 'community caretaking' reason . . . defendants Kenney and Postolaki ordered the impoundment of Plaintiff's vehicle" despite the fact that plaintiff requested that his niece, who was present at the restaurant, be allowed to drive the vehicle home. (Sec. Am. Compl. (Dkt. No. 16) at 4.) Although in their motion defendants acknowledge the second amended complaint's claim for "unlawful impoundment of plaintiff's vehicle," (Defs.' MTD (Dkt. No. 18) at 4), defendants do not otherwise argue that claim should be dismissed. "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005). See also United States v. Cervantes, 703 F.3d 1135, 1143 (9th Cir. 2012) ("the impoundment of Cervantes's vehicle was not justified by the community caretaking exception to the Fourth Amendment's warrant requirement").

8

claims that law enforcement officers have used excessive force – deadly or no t– in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

In his second amended complaint plaintiff alleges, in part, that after defendant Postolaki "pushed Plaintiff against his vehicle" and placed "extremely tight" handcuffs on him, plaintiff "communicated to Defendant Sean Kenney that he had no right to choke Teresa Scott." (Sec. Am. Compl. (Dkt. No. 16) at 3.) "Defendant Kenney approached Plaintiff, placed his hands around Plaintiff's throat and began choking Plaintiff where Plaintiff could not breathe . . . ." (Id.) The choking lasted "approximately for 15-20 seconds" and defendant Postolaki "failed to attempt to intercede" to stop defendant Kenney's from choking plaintiff. (Id.)

In their motion to dismiss defendants argue that the second amended complaint fails to allege a cognizable claim for excessive force against defendant Postolaki because "the facts provided by plaintiff establish that defendant Postolaki had no opportunity to intercede." (Defs.' MTD (Dkt. No. 18) at 7.)

"'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (quoting United States v. Koon, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994)). Accordingly, "[a] law enforcement officer who fails to intercede when his fellow officers deprive a victim of his Fourth Amendment right to be free from an excessive use of force would, like his fellow officers, be liable for depriving the victim of his Fourth Amendment rights." Arias v. Amador, --- F. Supp.3d ---, ---, No. 1:12-cv-0586 LJO SAB, 2014 WL 6633240, at *14 (E.D. Cal. Nov. 12, 2014). "However, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Cunningham, 229 F.3d at 1289-90. "[I]f a violation happens so quickly that an officer had no 'realistic opportunity' to intercede, then the officer is not liable for failing to intercede." Knapps v. City of Oakland, 647 F.Supp.2d 1129, 1159 (N.D. Cal. 2009) (quoting Cunningham, 229 F.3d at 1289-90)).

Here, based on the allegations of the second amended complaint, the undersigned cannot find that defendant Postolaki did not have a realistic opportunity to intercede at the motion to

9

dismiss stage of this litigation. As defendants acknowledge, "[p]laintiff does not allege where Postolaki was standing when plaintiff was allegedly being choke." (Defs.' MTD (Dkt. No. 18) at 7.) It may be that evidence eventually establishes that the distance between defendant Postolaki and where plaintiff was allegedly being choked was simply too great to provide defendant Postolaki with an opportunity to intercede. Conversely, the evidence may demonstrate that defendant Postolaki was so close in proximity at the time defendant Kenney was allegedly choking plaintiff that defendant Postolaki could have easily interceded.[7]

Moreover, in his second amended complaint plaintiff also alleges that defendant Postolaki pushed plaintiff against a vehicle and placed tight handcuffs on him, either of which act could support a claim for excessive use of force. See Winterrowd v. Nelson, 480 F.3d 1181, 1184 (9th Cir. 2007) ("No reasonable officer could conclude that an individual suspected of a license plate violation posed a threat that would justify slamming him against the hood of a car."); LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000) ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force.").

Accordingly, for the reasons set forth, defendants' motion to dismiss should be denied as to the second amended complaint's claim for excessive use of force against defendant Postolaki.[8]

III.    Monell Claim

In their motion to dismiss defendants also argue that the second amended complaint fails to allege a cognizable claim against the City of Vallejo pursuant to Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). (Defs.' MTD (Dkt. No. 18) at 8-9.)

---

[7] The current posture of this case is not like that in Cunningham, in which "the undisputed evidence" established that that the non-shooting officer had no "realistic opportunity" to intercede. 229 F.3d at 1289-90. See also Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) ("none of the affidavits submitted with the officers' motion for summary judgment do any of the officers state they did not have the opportunity to intervene to prevent Officer Meecham from firing the gun"). Again, defendants have raised their arguments in support of dismissal, not in seeking summary judgment in their favor. Finally, the undersigned notes that in his opposition to defendants' motion, plaintiff argues that defendant Kenney choked plaintiff in defendant Postolaki's "immediate presence." (Pl.'s Opp.'n (Dkt. No. 19) at 6.)

[8] Defendants do not seek dismissal of the second amended complaint's claim for excessive force against defendant Kenney.

Pursuant to the decision in Monell a municipality may be liable under § 1983 where the municipality itself causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694.  Therefore, municipal liability in a § 1983 case may be premised upon: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy;" or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." Price, 513 F.3d at 966.

"A custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Hunter v. County of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011).  See also Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992) ("A section 1983 plaintiff may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."); McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error.").

"To survive a motion to dismiss, 'a bare allegation that government officials' conduct conformed to some unidentified government policy or custom' is insufficient; instead, plaintiffs' complaint must include 'factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" Shelley v. County of San Joaquin, 954 F. Supp.2d 999, 1009 (E.D. Cal. 2013) (quoting AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)).

Here, after concluding the factual allegations concerning plaintiff's interactions with defendant Kenney and defendant Postolaki, the second amended complaint identifies nine contemporaneous civil rights actions that plaintiff is aware of brought against police officers of

the City of Vallejo and one action that allegedly concluded in a jury finding that City of Vallejo police officers used excessive force against a plaintiff.  (Sec. Am. Compl. (Dkt. No. 16) at 8.)  Additionally, in his second amended complaint plaintiff alleges that "the City of Vallejo has a longstanding practice, pattern, policy or custom of allowing Vallejo Police Officers to use excessive force."  (Id.)

In addition, in his second amended complaint plaintiff alleges that he "believes and intends to prove" that members of the City of Vallejo Police department, "including Defendants Kenney and Postolaki" have engaged in "a repeated practice of unreasonably detaining and using excessive force against individuals including plaintiff[.]"  (Id.)  According to plaintiff, as a result of these incidents, "City [of Vallejo] Police officer have injured and killed numerous citizens in 2001-2014 and none of the officers involved have been disciplined or retrained."  (Id.)  Plaintiff concludes by alleging that the City of Vallejo's indifference stems from "an entrenched posture of deliberate indifference to the constitutional rights of primarily the minority citizens who live in the City of Vallejo . . . ."  (Id.)

Presented with similar allegations, courts throughout California have found that a cognizable Monell claim has been stated.  As one judge of this court recently observed in denying a motion to dismiss such a claim:

> The FAC alleges that before the incident underlying this action took place, policymakers at the City, including Chief Kreins, knew of instances in which Officer Kenney and other officers shot individuals who did not pose a threat, including victims who were disabled, knew the shootings were unlawful and outside the accepted law enforcement standards, and yet took no action to correct training programs or policies and procedures that allowed such shootings to take place.  The FAC specifically alleges, that despite this information, the City took no action to adequately investigate, supervise, discipline, or train Officer Kenney or the other officers.  Furthermore, the FAC alleges that the actions of the officers in this case were carried out pursuant to customs and practices within the Vallejo Police Department, which are listed in detail in the FAC.  The FAC alleges these failures and customs and practices 'were a moving force and/or a proximate cause of the deprivations of Plaintiffs' constitutional rights.  The Court finds such factual allegations adequately allege a claim for Monell liability.

Moore v. City of Vallejo, --- F. Supp.3d ---, ---, No. 2:14-cv-0656 JAM KJN, 2014 WL 5325461,

at *4 (E.D. Cal. Oc. 17, 2014).  See also Solis v. City of Vallejo, No. 2:14-cv-0483 KJM KJN, 2014 WL 2768847, at *6 (E.D. Cal. Jun3 17, 2014) ("Here, the court finds plaintiff's allegations are sufficient to state a claim for municipal liability and survive a motion to dismiss.  Plaintiff alleges that 'it was the policy, practice and custom of . . . [the County] . . . to violate the Fourth Amendment.'  'Those violations which constituted the policy . . . included, but were not limited to, entering private residences without a warrant and without exigent circumstances; pointing firearms at residents, in their own home, and who were cooperating with officer commands; detaining residents without the requisite cause; and using unreasonable, unjustified, and/or excessive force.'  Plaintiff further alleges those policies 'were the moving forces behind the violation of [p]laintiff's rights protected by the Fourth Amendment.'  These allegations give fair notice to enable the County to defend itself effectively."); IDC v. City of Vallejo, No. 2:13-cv-1987 DAD, 2014 WL 2567185, at *6 (E.D. Cal. June 6, 2014) ("Here, the amended complaint alleges that following plaintiff's arrest, the criminal charges brought against him were 'summarily dropped' after his criminal defense attorney 'filed a Pitchess motion' seeking to discover prior incidents involving the excessive use of force by defendants Kenney and Thompson.  Moreover, plaintiff alleges that he 'is informed and believes based on the foregoing' that defendants Kenney and Thompson, 'engaged in repeated acts of excessive force, misconduct, and civil rights violations' prior to the incident at issue here.  Finally, plaintiff has alleged that despite having knowledge of the repeated use of excessive force by Kenney and Thompson, the City of Vallejo and the Vallejo Police Department allegedly failed to take measures to prevent their repeated misconduct."); Howard v. City of Vallejo, No. CIV. S-13-1439 LKK KJN, 2013 WL 6070494, at *4 (E.D. Cal. Nov. 13, 2013) (finding allegations that city failed to discipline officers for prior misconduct was "sufficient to give the City fair notice of plaintiff's claim that the City has a policy of deliberate indifference to a pattern and practice of excessive use of force and other violations of the constitutional rights of citizens by City police officers, particularly minority citizens, that is manifested in its failure to discipline or retrain officers involved in such incidents"); Bass v. City of Fremont, No. C12-4943 TEH, 2013 WL 891090, at *4 (N.D. Cal. Mar. 8, 2013) (allegations of officers "engaged in a pattern and practice of using unnecessary and

excessive force and falsely reporting crimes, and that the municipal entities demonstrated deliberate indifference to this pattern and practice of constitutional violations" found to be "plausible and ... sufficient to give the municipal entities notice of the specific policies, customs, and practices that are alleged to have caused the deprivation of Bass's rights"); Wise v. Nordell, No. 12-CV-1209 IEG (BGS), 2012 WL 3959263, at *9 (S.D. Cal. Sept. 10, 2012) ("Plaintiffs allege that Nordell acted contrary to county policy and violated their constitutional rights, that he has acted in this manner for years, and that the County has condoned his conduct. Taking these allegations as true, Plaintiffs have sufficiently alleged a claim for municipal liability under Monell."); East v. City of Richmond, No. C 10-2392 SBA, 2010 WL 4580112, at *4 (N.D. Cal. Nov. 3, 2010) ("However, Plaintiff's claim is not predicated solely on Chief Magnus' failure to act in this particular instance. Rather, the FAC alleges that Chief Magnus knew of other, repeated acts of misconduct by Officers Hauschild and Souza, but yet, failed to take any corrective action against these officers. Such allegations are sufficient to state a plausible claim for liability under Monell.").

The undersigned finds the reasoning of the cases cited above to be persuasive and, applying the standards applicable to a motion to dismiss, finds that the allegations of plaintiff's second amended complaint state a cognizable Monell claim against the City of Vallejo. Accordingly, defendants' motion to dismiss the second amended complaint's Monell claim against defendant City of Vallejo should be denied.[9]

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' September 5, 2014 motion to dismiss (Dkt. No. 18) be denied; and

2. Defendants be directed to file an answer to the second amended complaint within 21 days of the date of any order adopting these findings and recommendations.

---

[9] Through the pending motion defendants also sought dismissal of any claim for punitive damages against the City of Vallejo. (Defs.' MTD (Dkt. No. 18) at 10.) At the hearing on defendants' motion to dismiss, plaintiff acknowledged that the claim for the award of punitive damages was pled in error and asked that the request be stricken from the complaint. Plaintiff's request was granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 16, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.pro se\hicks0669.mtd.f&rs.docx